# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DAVID SCHASZBERGER,** *et al.*, | : |
| **Plaintiffs** | : **CIVIL ACTION NO. 3:19-1922** |
| **v.** | : **(JUDGE MANNION)** |
| **AMERICAN FEDERATION OF STATE, COUNTY & MUNICIPAL EMPLOYEES, COUNCIL 13,** | : |
| | : |
| **Defendant** | : |

## <u>MEMORANDUM</u>

Presently before the court is the motion to dismiss the first amended complaint ("FAC"), (Doc. 16), of plaintiffs David Schaszberger, Bradford Schmittle, Kyle Clouse, Colby Conner, Jeanette Hulse, Gary Landiak, and Andrew Malene filed by defendant American Federation of State, County and Municipal Employees Union, Council 13 ("AFSCME"), (Doc. 18). Defendant AFSCME's motion seeks dismissal of the plaintiffs' claims against it for retrospective monetary relief under 42 U.S.C. §1983 for failure to state a claim upon which relief may be granted pursuant to Fed.R.Civ.P. 12(b)(6), and it seeks dismissal of plaintiffs' request for declaratory judgment under Rule 12(b)(1). Specifically, AFSCME contends that plaintiffs' First Amendment claims against it, in this putative class action,

for retrospective monetary relief under §1983 should be dismissed since it relied in good faith on the formerly valid Pennsylvania law and longstanding United States Supreme Court precedent that allowed it to collect fair-share fees from public-sector employees who were not members of the union. AFSCME contends that plaintiffs' request for declaratory judgment should be dismissed for lack of standing and mootness. Once again, *see* Wenzig v. SEIU Local 668, 426 F. Supp. 3d 88 (M.D. Pa. 2019), *aff'd*, Diamond v. Pennsylvania State Education Ass'n, 972 F.3d 262 (3d Cir. 2020), petition for *cert*. pending. This court concurs with the now well-settled caselaw that has dismissed claims identical to those raised by plaintiffs in their FAC, including the Third Circuit and five other Circuit Courts as well as numerous other district courts. For the reasons that follow, AFSCME's motion to dismiss will be **GRANTED** and, all of plaintiffs' claims against AFSCME will be **DISMISSED WITH PREJUDICE**.

## I.     BACKGROUND

The plaintiffs are non-members of AFSCME seeking to recover fair-share fees paid to the union when such fees were authorized by Pennsylvania state law, 71 P.S. §575, and had been held constitutional by

the United States Supreme Court in <u>Abood v. Detroit Board of Education</u>, 431 U.S. 209 (1977). Plaintiffs bring this civil rights action pursuant to <u>42 U.S.C. §1983,</u> and seek compensatory and declaratory relief against the Union in connection with its collection of fair-share fees from them prior to the U.S. Supreme Court's ruling in <u>Janus</u>.[1]

Pennsylvania permits certain of its own employees to organize and bargain collectively with the Commonwealth, through a representative organization of their choosing, over the terms and conditions of their employment. 43 P.S. §§1101.101, *et. seq*. AFSCME is a labor organization certified as the exclusive representative of certain classifications of state employees and for several bargaining units in the state. Plaintiffs were employed by the state in jobs that were within a classification covered by AFSCME and their bargaining units were represented by AFSCME. Since the FAC states the particular employment of each plaintiff as well as the

---

[1] The facts alleged in plaintiffs' FAC must be accepted as true in considering defendant AFSCME's motion to dismiss. *See* <u>Dieffenbach v. Dept. of Revenue, 490 Fed.Appx. 433, 435 (3d Cir. 2012)</u>; <u>Evancho v. Evans, 423 F.3d 347, 350 (3d Cir. 2005)</u>.

Also, since the legal standard to state a claim under §1983 is referenced in the briefs and is well known, the court will not repeat it herein. *See* <u>Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996)</u> (To state an actionable claim under §1983, a plaintiff must prove that someone deprived her of a constitutional right while acting under the color of state law.).

state agency for which they worked, they are not repeated herein. (Doc. 16 at 2-3). AFSCME had a legal duty to represent equally the interests of all employees in the bargaining units, in collective bargaining and grievance administration, whether they were dues-paying members of the union or not. Plaintiffs were not members of AFSCME, but they allege that the union was legally allowed to collect fair share fees from them under Pennsylvania's Public Employee Fair Share Fee Law, 71 P.S. §575, since it represented them in collective bargaining.[2]

Under state law, AFSCME negotiated with the state a Master Agreement ("MA") for the collection of fair-share fees from nonmembers state employees, including plaintiffs.

In particular, Article 4, Section 2 of the MA, which was effective from July 1, 2016 through June 30, 2019, provided:

> The Employer further agrees to deduct a fair share fee biweekly from all employees in the bargaining unit who are not members of the Union. Authorization from non-members to deduct fair share fees shall not be required. The amounts to be deducted shall be certified to the Employer by the Union and, the aggregate deductions of all employees shall be remitted

_____

[2]Since plaintiffs were public employees employed by Pennsylvania, they were subject to its "agency-shop statute", the fair share fee law, namely, 71 Pa.Stat.Ann. §575. *See also* Diamond v. Pennsylvania State Education Association, 399 F.Supp.3d 361, 371 (W.D. Pa. July 8, 2019), *aff'd*, Diamond v. Pennsylvania State Education Ass'n, 972 F.3d 262 (3d Cir. 2020).

together with an itemized statement to the Union by the last day of the succeeding month, after such deductions are made.

Thus, under the MA, prior to June 27, 2018, all Commonwealth employees in the collective bargaining units who were represented by AFSCME and who were not union members, such as plaintiffs, were forced to pay "fair-share fees" to AFSCME as a condition of their public employment. Plaintiffs state that at no time was any one of them a member of AFSCME. Plaintiffs further allege that before June 27, 2018, government employers covered by the MA, such as they were, involuntarily had fair-share fees deducted from their paychecks despite the fact that they "never affirmatively authorized these fees to be taken from their [wages]." Rather, they allege that "their employer automatically garnished [their] wages directly from [their] paychecks and transmitted them to AFSCME." Plaintiffs further allege that before June 27, 2018, government employers covered by the CBA "deducted fair share fees from Plaintiffs' and other nonmembers' wages without their consent and, ..., transferred those funds to AFSCME, which collected those funds." (Doc. 16 at paras. 16-18).

As such, plaintiffs aver that "AFSCME should have known that its seizure of fair share fees from non-consenting employees likely violated the First Amendment." (Id. at para. 18).

Plaintiffs also seek to bring this case as a class action under Fed.R.Civ.P. 23(b)(3) for themselves and for all others similarly situated. They define the proposed class as "all current and former Commonwealth employees from whom AFSCME collected fair share fees pursuant to its collective bargaining agreement with the Commonwealth of Pennsylvania." (Id. at para. 19).

Plaintiffs raise claims in their FAC under the First Amendment. Specifically, plaintiffs allege that "AFSCME [acting under color of state law in concert with Pennsylvania] violated [their] and class members' First Amendment rights to free speech and association, as secured against state infringement by the Fourteenth Amendment to the United States Constitution and 42 U.S.C. §1983, by requiring the payment of fair share fees as a condition of employment and by collecting such fees." (Id. at 7).

As relief, plaintiffs request declaratory judgment, pursuant to 28 U.S.C. §2201(a), "declaring that AFSCME violated Plaintiffs' and class members' constitutional rights by compelling them to pay fair share fees as a condition of their employment and by collecting fair-share fees from them without consent." Additionally, plaintiffs seek monetary damages "in the full amount of fair share fees and assessments seized from their wages", as well as costs and attorneys' fees under 42 U.S.C. §1988. (Id. at 8).

Plaintiffs are proceeding on their FAC filed on December 18, 2020. (Doc. 16). On January 19, 2021, AFSCME filed its motion to dismiss plaintiffs' FAC, (Doc. 18), and filed its brief in support, (Doc. 24), on February 2, 2021. On February 16, 2021, plaintiffs filed their brief in opposition. (Doc. 26). AFSCME filed its reply brief on March 2, 2021. (Doc. 28).

The court has jurisdiction over this case pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1343(a) because plaintiffs aver violations of their rights under the U.S. Constitution. Venue is appropriate in this court since AFSCME is located in this district and the alleged constitutional violations occurred in this district. *See* 28 U.S.C. §1391.

## II.  DISCUSSION

Plaintiffs instituted this case after the Supreme Court decided <u>Janus</u>.[3] Plaintiffs are state employees who, before <u>Janus</u>, were required to pay fair-share fees to AFSCME for collective bargaining representation. Specifically, the MA contained a fair-share fee provision which required plaintiffs to pay fair share fees to AFSCME. However, after the <u>Janus</u>

---

[3] <u>Janus v. American Federation of State, County, and Municipal Employees, Council 31</u>, — U.S. —, 138 S. Ct. 2448 (2018).

decision, AFSCME stopped receiving fair-share fees from non-members, including plaintiffs. In this action, plaintiffs seek AFSCME to repay themselves, as well as a putative class of all non-union state employees, all the fair-share fees that the union received prior to Janus.

As a backdrop, prior to Janus, unions representing government employees could use "agency shop" clauses in collective bargaining agreements "which required every employee represented by a union, even those who declined to become union members for political or religious reasons, to pay union dues." Diamond, 399 F.Supp.3d at 370-71. In Abood v. Detroit Board of Education, 431 U.S. 209, 97 S.Ct. 1782 (1977), the Supreme Court "held that the charges were constitutional to the extent they were used to finance the union's collective-bargaining, contract-administration, and grievance activities." *Id*. at 370. "[T]he Court [in Abood] also concluded that the agency-shop clause and fees were unconstitutional insofar as the clause compelled non-member teachers to pay fees to the union that supported the union's political activities." *Id*.

In accordance with Abood, Pennsylvania enacted its own agency-shop statute for public employees in 1988, 71 Pa. Stat. §575. According to Section 575, if mandated by the provisions of a collective-bargaining agreement, non-members of public-employee unions must pay fair-share fees to the unions. *Id*. §575(b). These fees consist of the regular union-membership dues less "the cost for the previous fiscal year of [the unions']

> activities or undertakings which were not reasonably employed to implement or effectuate the duties of the employee organization as exclusive representative." *Id*. §575(a).

*Id.* at 371.

Thus, prior to Janus, Pennsylvania law expressly allowed a labor union which was the representative of a bargaining unit of public employees to collect fair-share fees from the employees who were members of the bargaining unit but who did not join the union, as a condition of their employment. *See* 71 P.S.A. §575; 43 P.S.A. §1102.3. Further, based on Abood, "the general propriety of the fair-share fees permitted under Section 575 withstood constitutional scrutiny for many years." Diamond, 399 F.Supp.3d at 370. *Id*. (string citations omitted).

In Janus, the Supreme Court overruled Abood, and held that "a state law requiring non-union-member public employees to pay fees to the union to compensate the union for costs incurred in the collective-bargaining process" was unconstitutional. *Id*. at 372. Thus, the Court in Janus, 138 S. Ct. at 2486, held that "States and public-sector unions may no longer extract agency fees from nonconsenting employees." *Id*. Further, the Court held that "[n]either an agency fee nor any other payment to the union may be deducted from a non[-]member's wages, nor may any other attempt be made to collect such a payment, unless the employee affirmatively

consents to pay." *Id. See also* <u>Babb v. California Teachers Association</u>, 378 F.Supp.3d 857, 867 (C.D. Ca. 2019) (In <u>Janus</u>, the Supreme Court "overruled <u>Abood</u> [ ] and its progeny, holding that no form of payment to a union, including agency fees, can be deducted or attempted to be collected from an employee without the employee's affirmative consent.") (citing <u>Janus</u>, 138 S.Ct. at 2486).

Additionally, the Supreme Court in <u>Janus</u>, 138 S.Ct. at 2459, 2486, held that it was a violation of the First Amendment for public sector unions to require non-members to pay fair-share fees as a condition of public employment. Following <u>Janus</u>, Pennsylvania's statute allowing the collection of "fair-share" fees from non-members by unions is no longer enforceable. *See* <u>Hartnett v. Pennsylvania State Education Association</u>, 390 F.Supp.3d 600 (M.D. Pa. May 17, 2019), *aff'd*, 963 F.3d 301 (3d Cir. 2020). In <u>Diamond</u>, 399 F.Supp.3d at 385, the court held that the issue of "whether Union Defendants could constitutionally collect fair-share fees from Plaintiffs pursuant to Section 575" "was mooted by the intervening <u>Janus</u> decision, which held that fair-share fees are unconstitutional."

Plaintiffs essentially argue that they suffered injury from the pre-<u>Janus</u> agency-shop arrangements because they were forced to pay AFSCME fair-share fees as a condition of their employment with the state

even though they declined union membership. They basically contend that their constitutional right to withhold money from the union was violated and that this inflicted an injury upon them that can be redressed under §1983 by an award of money damages for the violation of their First Amendment rights to free speech and association by forcing them to pay AFSCME fair-share fees as a condition of their employment.

Plaintiffs assert that the good faith defense should not apply to their claim for damages under §1983 since they contend it is contrary to the statute. Plaintiffs argue that the Third Circuit's decision in <u>Diamond</u> supports their position, but the court does not find plaintiffs' contention persuasive.

AFSCME contends that it is entitled to assert a good faith defense to plaintiffs' §1983 claim seeking retrospective monetary relief for their payments of the fair-share fees based on "Pennsylvania statute and then-controlling and directly on-point United States Supreme Court precedent that expressly authorized fair-share fees." There is no dispute that before <u>Janus</u> the collection of fair-share fees by AFSCME was permitted by Pennsylvania law as well as by the Supreme Court which repeatedly held that fair-share fees were constitutional and that public employees who were non-union members could be compelled to pay such fees that financed the

union's collective bargaining activities. Abood, 431 U.S. at 225. Thus, requiring non-union member public employees to pay fair-share fees as a condition of their public employment was undoubtedly deemed constitutional in Abood, 431 U.S. at 232. As such, AFSCME contends that since it acted "in good-faith reliance on presumptively valid state laws [in collecting pre-Janus fair-share fees], [it] ha[s] a complete defense to §1983 liability" and cannot be held retrospectively liable to plaintiffs in this case.

AFSCME points out that since Janus, "six courts of appeals—including the Third Circuit in Diamond—and more than 30 federal district courts [including this court] have decided the exact issue presented here: whether public employees who were required to pay fair share fees prior to the Janus decision are entitled under 42 U.S.C. §1983 to the repayment of those fees, which they paid at a time when fair share fee requirements were authorized by state law and Supreme Court precedent. Without exception, all of these courts have held that the good-faith defense available to private parties under §1983 precludes such attempts to hold unions liable for following the law as it existed at the time of their actions." (Doc. 24 at 11-12) (string citations omitted).

As such, AFSCME states that "[t]hese [numerous] decisions are, …, firmly grounded in the law and fully applicable here." (Id.). It states that

these cases have all rejected the same §1983 claim plaintiffs raise in the instant case based on the good-faith defense.[4] Despite plaintiffs' arguments in their brief in opposition as to why the good faith defense should not bar their suit for damages under §1983, the court again finds, as it did in Wenzig, the many cases to which AFSCME cites are persuasive and concurs with their conclusion that the good faith defense shields the union from liability with respect to plaintiffs' post-Janus claims for damages under §1983.

Further, Diamond does not support the plaintiffs' arguments regarding the good-faith defense and their contention that AFSCME cannot rely on this defense with respect to their claims for pre-Janus fair-share fees. In Oliver v. SEIU Local 668, 830 Fed.Appx. 76, 80 (3d Cir. 2020) (non-precedential), the Third Circuit explained that in Diamond, 972 F.3d at 271, "Judge Rendell's opinion for the Court concluded that 'the good faith defense is available to a private-party defendant in a §1983 case if, after considering the defendant's 'subjective state of mind,' the court finds no

---

[4]Since AFSCME correctly cites to the cases in its brief, (Doc. 24 at 11-12), which have held that the good-faith defense precluded recovery in §1983 actions similar to the instant case, the court does not re-cite all of the applicable cases.

'malice' and no 'evidence that [the defendant] either knew or should have known of the statute's constitutional infirmity.'" (citations omitted). The Court then stated that "Judge Rendell further concluded that 'principles of equality and fairness' foreclose §1983 liability when the union adhered to the governing law of the state." *Id*. (citations omitted). The Court also indicated that in his concurring opinion, "Judge Fisher likewise concluded that the union had no retroactive civil liability." *Id*. (citation omitted).

As summarized by AFSCME, (Doc. 28 at 4), "[t]he *Oliver* court then held that *Diamond* foreclosed the plaintiffs' claim for pre-*Janus* monies remitted to the defendant union in that case", and thus, "the law of the Third Circuit as expressed in *Diamond* is that non-members cannot recover back fees remitted to unions before *Janus*." *See* <u>Oliver</u>, 830 Fed.Appx. at 80.

Plaintiffs contend that their fair-share payments would have been deemed involuntary under the common law based on Judge Fisher's concurring opinion in <u>Diamond</u>. Plaintiffs then cite to paragraph 16 of their FAC, (Doc. 16), which they filed after <u>Diamond</u>, and contend that they did not make their payment of fair share fees voluntarily because they "never affirmatively authorized that these fees could be taken from their paychecks." They then claim that, under Judge Fisher's reading of the

common law, the good faith defense is not available to AFSCME and that their unauthorized fees paid to the union are recoverable. Plaintiffs attempt to distinguish <u>Diamond</u> from their case by stating that they "allege that the money was taken from them involuntarily" is not convincing. As AFSCME explains, (Doc. 28 at 5), and as this court is well-aware regarding the complaint in <u>Wenzig</u>, "the *Diamond* and *Wenzig* plaintiffs also alleged that they had not authorized the deduction of any fair-share fees before those fees were deducted from their paychecks, and Judge Fisher [in <u>Diamond</u>] concluded that those plaintiffs 'have *not* pleaded any facts, suggesting that their payments were either sufficiently involuntary or exacted on a fraudulent basis, to permit a reasonable person to infer that the unions might be liable.'" (quoting <u>Diamond</u>, 972 F.3d at 285) (emphasis added by AFSCME). As Judge Fisher noted in <u>Diamond</u>, 972 F.3d at 285 n. 7, "the plaintiffs [including our plaintiffs] have [not] pleaded anything approaching the kind of involuntariness or duress articulated in the cases I discuss [in his opinion]." *Id*. at 285 n.7.

Insofar as the plaintiffs rely upon Judge Phipps' dissenting opinion, (Doc. 26, at 7-9), as well as their interpretation of Judge Fisher's concurring opinion, and urge the court to "repudiate the purported grounds for carving a 'good faith' defense into Section 1983", the court is obliged to follow the

precedential majority opinion in <u>Diamond</u>. As the court noted in <u>Brown v. AFSCME, Council No. 5</u>, ---F.Supp.3d---, 2021 WL 533690, *2, explained:

> Neither the Supreme Court nor the Eighth Circuit has squarely addressed whether §1983 affords private actors a good faith defense to liability, nor whether such a defense applies to a public-sector employee's claim for reimbursement of fair-share fees paid prior to *Janus*. But in analyzing the Unions' proffered defense, the Court is not without persuasive authority: every court to consider the issue has held that public-sector unions may assert a good faith defense to §1983 claims for reimbursement of pre-*Janus* fair-share fees. *E.g.*, <u>Janus v. Am. Fed'n of State, Cty. & Mun. Emps., Council 31</u>; AFL-CIO, 942 F.3d 352, 364 (7th Cir. 2019) ("<u>Janus</u> Remand"); <u>Danielson v. Inslee</u>, 945 F.3d 1096, 1098 (9th Cir. 2019), *cert. denied*, No. 19-1130, —— U.S. ——, —— S.Ct. ——, —— L.Ed.2d ——, 2021 WL 231555 (U.S. Jan. 25, 2021); <u>Lee v. Ohio Educ. Ass'n</u>, 951 F.3d 386, 389 (6th Cir. 2020), *cert. denied*, No. 20-422, —— U.S. ——, —— S.Ct. ——, —— L.Ed.2d ——, 2021 WL 231559 (U.S. Jan. 25, 2021); <u>Wholean v. CSEA SEIU Local 2001</u>, 955 F.3d 332, 334 (2d Cir. 2020); <u>Diamond v. Pennsylvania State Educ. Ass'n</u>, 972 F.3d 262, 271 (3d Cir. 2020); <u>Doughty v. State Emps.' Ass'n of New Hampshire, SEIU Local 1984, CTW, CLC</u>, 981 F.3d 128, 133 (1st Cir. 2020).

The court in <u>Brown</u>, *id*. at n. 1, also addressed the different opinions

in <u>Diamond</u> and noted:

> Plaintiffs argue that the Third Circuit's decision in *Diamond* departed from the opinions of the other circuits. There, Judge Rendell, writing for the court, recognized the good faith defense and held that it barred the plaintiffs' *Janus* claim against their union. *Id*. at 271. Judge Fisher, concurring in the judgment, disagreed with Judge Rendell's reasoning, but similarly concluded that the Union had a defense to the plaintiffs' claims. *Id*. at 274 ("There was available in 1871, in both law and equity, a well-established defense to liability substantially similar to the liability the unions face here. Courts consistently held that judicial decisions invalidating a statute or overruling a prior decision did not generate retroactive civil liability with regard to financial

transactions or agreements conducted, without duress or fraud, in reliance on the invalidated statute or overruled decision."). Only Judge Phipps, in dissent, squarely rejected a defense based on the union's good faith reliance on the state statute and *Abood*. *Id*. at 285. Thus, both Judge Rendell and Judge Fisher recognized that the union's reliance on the state statute and *Abood* established an affirmative defense to the plaintiffs' *Janus* claim, though they reached that conclusion by different reasoning.

The court in <u>Brown</u>, *id*. at *4, then concluded that the good faith defense, although "narrow", applied and held:

> The Unions collected fair-share fees from Plaintiffs as authorized by the Minnesota [law "PELRA"]. The Unions' reliance on PELRA was supported by *Abood* and forty years of precedent thereafter. Plaintiffs do not allege that the Unions acted with malice, with the knowledge that PELRA was unconstitutional, or that the Unions otherwise acted in bad faith. Accordingly, the Court finds that the Unions' good faith defense is established on the face of the Complaints, and dismissal under Federal Rule of Civil Procedure 12(b)(6) is therefore proper. [citation and footnote omitted].

Thus, it is now clear in this Circuit following <u>Diamond</u> that unions sued for a refund of pre-<u>Janus</u> fair-share fees can assert the good-faith defense. *See* <u>Oliver</u>, 830 Fed.Appx. at 80 (holding that <u>Diamond</u> foreclosed refund claim against union for pre-<u>Janus</u> monies); <u>Diamond</u>, 972 F.3d at 271 ("It is fair—and crucial to the principle of rule of law more generally—that private parties like the Unions should be able to rely on statutory and judicial authorization of their actions without hesitation or fear of future monetary liability.") (citations omitted).

AFSCME contends that "[t]he good-faith defense precludes Plaintiffs' demand for damages based on the Union's receipt of fair share fee payments prior to the *Janus* decision of June 27, 2018" and that "[t]here is no dispute that these fees were assessed and collected under state law specifically authorizing them." (Doc. 24 at 17) (citing 71 P.S. §575). Indeed, as this court held in <u>Wenzig</u>, and based on the numerous cases cited therein, the court again finds that a union such as AFSCME can raise the good-faith defense with respect to plaintiffs' First Amendment claims under §1983 for the repayment of the fair-share fees that they paid the union. *See also* <u>Janus v. AFSCME</u>, 942 F.3d 352, (7th Cir. Nov. 5, 2019) ("<u>Janus</u> III"). As such, since AFSCME "relied substantially and in good faith on both a [PA] state statute *and* unambiguous Supreme Court precedent [<u>Abood</u>] validating that statute", *id*. at 367(emphasis original), AFSCME can assert the good faith defense to plaintiffs' First Amendment claims seeking to hold it liable under §1983. *See* <u>Hoekman v. Education Minnesota</u>, ---F.Supp.3d ---, 2021 WL 533683 (D. Minn. Feb. 12, 2021) ("this Court [in <u>Brown</u>, *supra*] held that private actors who act in good faith reliance on a state statute and Supreme Court case law holding that statute constitutional have an affirmative defense to §1983 liability." Like every court to consider the issue, the Court finds that the good faith defense bars [plaintiffs'] §1983

claims for a refund of fair-share fees paid prior to *Janus*.") (sting citations omitted).

To the extent that the plaintiffs contend AFSCME's good-faith defense conflicts with the Supreme Court's cases on the retroactive application of its decisions, as the Third Circuit did in <u>Diamond</u>, 972 F.3d at 268 n. 1, even if this court assumed, *arguendo,* that <u>Janus</u> applied retroactively it nonetheless would find that the good faith defense still precludes the relief our plaintiffs seek. *See* <u>Brown</u>, 2021 WL 533690, \*4 (holding that "the good faith defense to a *Janus* claim for reimbursement of fair-share fees is not an ad hoc 'remedy' designed to vindicate the Unions' reliance interests and undermine *Janus's* retroactivity." The court in <u>Brown</u>, *id*. at \*4 n. 4, also noted that "[it] assumes, without deciding, that *Janus* is retroactively applicable—as did many of the other courts to address *Janus* claims like Plaintiffs.'" (citing <u>Wholean v. CSEA SEIU Local 2001</u>, 955 F.3d 332, 336 (2d Cir. 2020) ("[W]e note that nothing in *Janus* suggests that the Supreme Court intended its ruling to be retroactive.... Even if the retroactivity of *Janus* is presumed, ... [a] good-faith defense would still preclude the relief Appellants seek.").

AFSCME was acting in accordance with <u>Abood</u> and state law, prior to <u>Janus</u>, at the time it allegedly was violating the plaintiffs' First

Amendment rights. Thus, as AFSCME points out, (Doc. 28 at 12), "both Judge Rendell and Judge Fisher cited [Reynoldsville Casket v. Hyde, 514 U.S. 749 (1995)], and determined that the unions' defense constituted a previously existing, independent legal basis for denying the relief sought by the plaintiffs." (citing Diamond, 972 F.3d at 268 n. 1 (opinion of Rendell, J.), 972 F.3d at 284 (concurring opinion of Fisher, J.)).

Thus, the court will grant AFSCME's motion and dismiss with prejudice plaintiffs' First Amendment claims in their FAC seeking to hold the union retrospectively liable under §1983. Based on the foregoing, the court finds futility in allowing plaintiffs leave to file a second amended complaint. *See* Janus, III, *supra*; Diamond, *supra*; Wenzig, *supra*; Babb, 378 F.Supp. 3d at 872 ("[E]very district court to consider whether unions that collected agency fees prior to Janus have a good-faith defense to §1983 liability [has] answered in the affirmative.") (citations omitted).

Finally, AFSCME argues that plaintiffs' request for Declaratory Judgment should be dismissed under Rule 12(b)(1) for lack of standing. It states that "Plaintiffs do not allege any ongoing constitutional violation; rather, the deduction of fair share fees by the Commonwealth and the transmission of those fees to the Union ceased more than a year before Plaintiffs filed their original Complaint." As such, it contends that "Plaintiffs

do not have standing to seek a judgment declaring that the Union's prior conduct was unconstitutional." (Doc. 24 at 18-19).

In Wenzig, 426 F. Supp. 3d at 100, this court held that "Declaratory judgment is not meant to adjudicate alleged past unlawful activity." In Diamond, 399 F.Supp. 3d at 385, 389, the court also held that plaintiffs' claims for declarative and injunctive relief with respect to fair-share fees were moot based on the Janus decision and union defendants' compliance with it. (citing collection of cases). *See also* Hartnett, 390 F.Supp.3d at 600-02, *aff'd*, 963 F.3d 301 (3d Cir. 2020) (court found claims for declaratory and injunctive relief moot post-Janus since "[p]laintiffs face no realistic possibility that they will be subject to the unlawful collection of 'fair share' fees"); Blakeney v. Marsico, 340 Fed.Appx. 778, 780 (3d Cir. 2009) (Third Circuit held that to satisfy the standing requirement of Article III, a party seeking declaratory relief must allege that there is a substantial likelihood that he will suffer harm in the future) (citations omitted).

The court again concurs with the courts in Diamond and Hartnett, and holds that our plaintiffs' request for declaratory judgment in their FAC is moot based on Janus and, based on the undisputed fact that AFSCME stopped collecting fair-share fees from state non-union member employees, including plaintiffs, following the Janus decision. As AFSCME

indicates, (Doc. 28 at 13), the <u>Janus</u> decision and its subsequent cessation of collecting fair share fees from state non-union member employees "occurred more than one year before Plaintiffs filed their Complaint and more than two years before Plaintiffs filed their [FAC], and there is no reasonable likelihood that the collection of fair share fees will reoccur." *See also* <u>Oliver v. SEIU Local 668</u>, 415 F.Supp.3d 602, 613 (E.D. Pa. 2019), *aff'd*, 830 Fed.Appx. 76 (3d Cir. 2020) (holding "Plaintiff's claims for declaratory and injunctive relief regarding the application of 43 P.S. §§1101.301(18), 1101.401, and 1101.705 suffers from lack of standing and mootness.").[5]

Thus, AFSCME's motion to dismiss will be granted with respect to plaintiffs' request for declaratory judgment.

## III. CONCLUSION

Based on the foregoing reasons, defendant AFSCME's motion to dismiss plaintiffs' FAC, **(Doc. 16)**, pursuant to Fed. R. Civ. P. 12(b)(1) and

---

[5]Also, as AFSCME notes, (Doc. 24 at 19 n. 5), there are several other cases holding that when a union had received fair-share fees before <u>Janus</u> and then stopped receiving such fees after <u>Janus</u>, a claim for declaratory judgment was non-justiciable. (citations omitted).

(6), **(Doc. 18)**, is **GRANTED**, and all of the plaintiffs' claims are **DISMISSED**

**WITH PREJUDICE**. An appropriate order will issue.


_s/ Malachy E. Mannion_
**MALACHY E. MANNION**
**United States District Judge**

**DATED: May 20, 2021**
19-1922-01